KATHERINE INEZ HALL v. WAKE COUNTY BOARD OF ELECTIONS

No. 37

(Filed 15 March 1972)

**1. Appeal and Error § 26— exception to judgment — review of face of record**

Where appellant took no exception to any finding of fact made by the trial court, and the only assignment of error is to the entry of the judgment, the facts found are binding upon the appellate court, and the only question presented is whether error of law appears on the face of the record.

**2. Elections § 2— eighteen-year olds — right to vote**

Eighteen-year olds are now *sui juris* and, if they possess the qualifications prescribed by law for all voters, are eligible to vote. Twenty-Sixth Amendment to the U. S. Constitution; G.S. 48A-1 to -2.

**3. Domicile § 1; Elections § 2— voter qualifications — residence — domicile**

As used in Article VI of the North Carolina Constitution of 1970, relating to qualifications to vote in this State, "residence" means "domicile."

**4. Domicile § 1— residence — domicile**

Residence simply indicates a person's actual place of abode, whether permanent or temporary; domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence.

Hall v. Board of Elections

5. **Domicile § 1— definition of domicile**

Domicile is the place to which a person intends to return when absent therefrom *(animus revertendi)*, and the place where he intends to remain permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave *(animus manendi)*.

6. **Domicile § 1— definition of domicile**

Two things must concur to constitute a domicile: First, residence; second, the intent to make the place of residence a home.

7. **Domicile § 1— mere sojourner**

One who lives in a place for a temporary purpose with the design of leaving when that purpose has been accomplished is a "mere sojourner" and retains his original home with all its incidental privileges and rights.

8. **Domicile § 1; Elections § 2— election laws — residence — domicile**

Residence, when used in the election law, means domicile. G.S. 163-57.

9. **Elections § 2— voting residence of college student**

The question whether a student's voting residence is at the location of the college he is attending or where he lived before he entered college is a question of fact which depends upon the circumstances.

10. **Domicile § 1; Elections § 2— college student — domicile — voting**

An adult student may acquire a domicile at the place where his university or college is situated, if he regards the place as his home, or intends to stay there indefinitely, and has no intention of resuming his former home, but if he goes to a college town merely as a student, intending to remain there only until his education is completed and does not change his intention, he does not acquire a domicile there.

11. **Domicile § 1— college student — domicile — presumption**

There is a rebuttable presumption that a student who leaves his parents' home to enter college is not domiciled in the college town to which he goes.

12. **Domicile § 3— domicile at birth**

The law permits no individual to be without a domicile; at birth he takes the domicile of the person upon whom he is legally dependent.

13. **Domicile § 1— presumption of continuance of domicile**

A domicile, once acquired, is presumed to continue and is never lost until a new one is established, the burden of proof being upon the person who alleges a change.

14. **Domicile § 1— change in domicile**

To effect a change of domicile there must be (1) an actual abandonment of the first domicile, accompanied by the intention not to re-

turn to it and (2) the acquisition of a new domicile by actual residence at another place, coupled with the intention of making the last acquired residence a permanent home

**15. Domicile § 1— proof of domicile**

Domicile is a fact which may be proved by direct and circumstantial evidence.

**16. Domicile § 1; Elections § 2— college student — domicile — place of voting**

The court must rely upon both the student's words and his actions to determine whether he has the intent to make the college town where he seeks to vote his home and to remain there indefinitely.

**17. Domicile § 1; Elections § 2— change in domicile — testimony as to intent**

A person's testimony regarding his intention with respect to acquiring a new domicile or retaining his old one is competent evidence, but is not conclusive of the question.

**18. Domicile § 1; Elections § 2— college student — change of domicile to college town — findings by court**

Findings of fact by the trial court that a student attending college in Raleigh had abandoned her former domicile and acquired a new one in Raleigh are binding on the appellate court and support the trial court's judgment that the student is entitled to vote in Raleigh, although the evidence would have justified the court in finding that the student was temporarily sojourning in Raleigh for the purpose of attending college and had not abandoned her former domicile.

APPEAL by Wake County Board of Elections from *Brewer, J.*, 15 December 1971 Session of WAKE, certified for initial appellate review by the Supreme Court under G.S. 7A-31(b)(1) upon motion of both parties.

On 15 October 1971, plaintiff applied for registration as a voter in Precinct No. 2 of Wake County. The precinct registrar refused to register her and, pursuant to G.S. 163-75, she appealed to the Wake County Board of Elections. The Board conducted a hearing as prescribed by G.S. 163-76 and, on 28 October 1971, decided that plaintiff was not entitled to registration. Within ten days plaintiff appealed to the Superior Court of Wake County. On 15 December 1971, Judge Brewer heard the matter *de novo* as provided by G.S. 163-77.

The parties stipulated that plaintiff was not disqualified to vote under G.S. 163-55; that her eligibility for registration as a voter in Precinct No. 2, Raleigh, Wake County, depended upon "whether she satisfies the residency requirements" of the

State's election law. The only evidence offered was the testimony of plaintiff, which tended to show:

Plaintiff was born in the United States on 25 April 1953 and has lived in North Carolina for the past thirteen years. She is the unmarried, eighteen-year-old daughter of parents who are residents of Tarboro, North Carolina. Plaintiff graduated from Tarboro High School in 1971 and attended summer school in Raleigh during the summer of 1971. In June of that year, she came to Raleigh for the specific purpose of continuing her education at Meredith College. Since June 1971, as a freshman, she has occupied a dormitory room on the college campus. Her address has been 314 Springfield Dormitory, Meredith College, Raleigh, since September 1971. During holidays she returns to Tarboro to the home of her parents. They continue to support her and to pay her college expenses; her grades are sent to them. All of plaintiff's personal property which she does not need at school, and for which she has no room, remains in her parents' home. Her pet dog, a cocker spaniel, now belongs to her parents. Plaintiff's church membership remains in Tarboro.

At the time of the hearing before the Wake County Board of Elections, plaintiff's checking account was in a Tarboro bank, and the address printed on her check was the Tarboro address of her parents. However, she was then marking through that address and writing in, "Box 159, Meredith College." In December 1971, about a week before the hearing before Judge Brewer, plaintiff opened a checking account with a Raleigh bank. On 29 November 1971 she had her address changed to Meredith College on her driver's license and also on the college records. She testified that she made those changes upon the advice of counsel to try to prove that she was "serious about remaining in Wake County"; that she planned to reside in Wake County indefinitely and considered Raleigh her home; that in June 1971 she formed the intent to stay in Raleigh "on a permanent basis." Plaintiff has not decided upon a vocation, but she is "thinking about law school."

On cross-examination plaintiff said "it would be too inconvenient to return to Tarboro to vote"; that she was familiar with the law giving students the right to vote in both primary and general elections by absentee ballot, but she still thought "it would be less inconvenient, that it would be easier to vote in Raleigh."

Judge Brewer substantially incorporated the foregoing evidence in his findings of fact, from which we quote only the following:

"5. Since September 1971, Plaintiff has dwelled at 314 Springfield Dormitory, Meredith College, Wake County, North Carolina, in Wake County Precinct No. 2. . . .

"18. Since at least September 1971, Plaintiff has intended and still intends to dwell indefinitely in Precinct No. 2, Wake County, Raleigh, North Carolina.

"19. Plaintiff has no present intention or plans to establish a permanent dwelling place outside Wake County."

Upon the facts found Judge Brewer concluded as a matter of law that plaintiff is a resident of Wake County, entitled to register as a qualified voter of Precinct No. 2, Wake County. He entered judgment ordering the Wake County Board of Elections to register plaintiff as a qualified voter of Precinct No. 2 in Raleigh.

Defendant excepted to the judgment and appealed.

*Sanford, Cannon, Adams & McCullough, by Robert W. Spearman and John H. Parker for plaintiff appellee.*

*Attorney General Morgan; Deputy Attorney General Bullock; and Assistant Attorney General Denson for defendant appellant.*

SHARP, Justice.

[1] Defendant took no exception to any finding of fact made by Judge Brewer. The only assignment of error is to the entry of judgment that "plaintiff is a resident of Wake County and is, therefore, entitled to register and vote." Thus, the facts found are binding upon this Court, and the only question presented is whether error of law appears on the face of the record. *Manufacturing Co. v. Clayton, Acting Comr. of Revenue,* 265 N.C. 165, 143 S.E. 2d 113 (1965); 1 N. C. Index 2d *Appeal and Error* § 26 (1967). Specifically, the question here is whether the facts found will support the legal conclusion that plaintiff has acquired a domicile in Raleigh, the place where she is attending college.

This controversy results from recent changes in the law altering the voting age and the age of majority. The twenty-sixth amendment to the United States Constitution, which became effective 5 July 1971, provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." In anticipation of the ratification of this amendment, on 17 June 1971, the General Assembly provided that upon its certification the age of majority was changed from twenty-one years to eighteen. G.S. 48A-1 to -2 (Ch. 585, N. C. Sess. Laws (1971).)

[2] Thus, eighteen-year olds are now *sui juris* and, if they possess the qualifications prescribed by law for all voters, are eligible to vote. Under N. C. Const. art. VI, § 2 (1970), "any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this article shall be entitled to vote at any election held in this State."

[3] Since 1868 our Constitution has required a voter to be a person who has "resided" in the State and in the precinct or ward for a specified time, and this Court has held "without variation that residence within the purview of this constitutional provision is synonymous with domicile. . . ." *Owens v. Chaplin,* 228 N.C. 705, 708, 47 S.E. 2d 12, 15 (1948), and cases cited therein. *Accord, Baker v. Varser,* 240 N.C. 260, 268, 82 S.E. 2d 90, 96 (1954). Residence as used in Article VI of the North Carolina Constitution of 1970 continues to mean domicile.

[4-6] Precisely speaking, *residence* and *domicile* are not convertible terms. A person may have his residence in one place and his domicile in another. Residence simply indicates a person's actual place of abode, whether permanent or temporary. Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence. When absent therefrom, it is the place to which he intends to return *(animus revertendi)*; it is the place where he intends to remain permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave *(animus manendi)*. Two things must concur to constitute a domicile: First, residence; second, the intent to make

the place of residence a home. *Martin v. Martin,* 253 N.C. 704, 118 S.E. 2d 29 (1960) ; *Sheffield v. Walker,* 231 N.C. 556, 58 S.E. 2d 356 (1950) ; *Reynolds v. Cotton Mills,* 177 N.C. 412, 99 S.E. 240 (1919) ; *Wheeler v. Cobb,* 75 N.C. 21 (1876) ; *Horne v. Horne,* 31 N.C. 99 (1848).

[7] One who lives in a place for a temporary purpose with the design of leaving when that purpose has been accomplished is a "mere sojourner." *Groves v. Comrs.,* 180 N.C. 568, 105 S.E. 172 (1920). He retains his "original home with all its incidental privileges and rights." Therefore, a residence for a specific purpose, "as at summer or winter resorts, or to acquire an education, or some art or skill in which the *animus revertendi* accompanies the whole period of absence," effects no change of domicile. *Hannon v. Grizzard,* 89 N.C. 115, 120 (1883).

[8] It is quite clear that residence, when used in the election law, means domicile. G.S. 163-57, which defines residence for registration and voting, incorporates the case law laid down in the opinions cited above. It provides:

"All registrars and judges, in determining the residence of a person offering to register or vote, shall be governed by the following rules, so far as they may apply:

"(1) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

"(2) A person shall not be considered to have lost his residence who leaves his home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

"(3) A person shall not be considered to have gained a residence in any county of this State, into which he comes for temporary purposes only, without the intention of making such county his permanent place of abode.

"(4) If a person removes to another state or county within this State, with the intention of making such state or county his permanent residence, he shall be considered to have lost his residence in the state or county from which he has removed.

Hall v. Board of Elections

"(5) If a person removes to another state or county within this State, with the intention of remaining there an indefinite time and making such state or county his place of residence, he shall be considered to have lost his place of residence in this State or the county from which he has removed, notwithstanding he may entertain an intention to return at some future time.

"(6) If a person goes into another state or county, or into the District of Columbia, and while there exercises the right of a citizen by voting in an election, he shall be considered to have lost his residence in this State or county.

"(7) School teachers who remove to a county for the purpose of teaching in the schools of that county temporarily and with the intention or expectation of returning during vacation periods to live in the county in which their parents or other relatives reside, and who do not have the intention of becoming residents of the county to which they have moved to teach, for purposes of registration and voting shall be considered residents of the county in which their parents or other relatives reside.

"(8) If a person removes to the District of Columbia or other federal territory to engage in the government service, he shall not be considered to have lost his residence in this State during the period of such service unless he votes there, and the place at which he resided at the time of his removal shall be considered and held to be his place of residence.

"(9) If a person removes to a county to engage in the service of the State government, he shall not be considered to have lost his residence in the county from which he removed, unless he demonstrates a contrary intention."

This Court has not heretofore decided a case directly involving the domicile of a student seeking to vote in the town to which he came for the purpose of enrolling in college. However, the question of a student's domicile will be determined by the following well-established rules of law, which are applicable to any situation in which it is necessary to locate an individual's domicile.

[9] *First:* The question whether a student's voting residence is at the location of the college he is attending or where he lived

before he entered college, is a question of fact which depends upon the circumstances of each individual's case. *See In Re Will of Marks,* 259 N.C. 326, 130 S.E. 2d 673 (1963) ; 29 C.J.S. *Elections* § 22 (1965) ; annot., 98 ALR 2d 488 (1964) ; 8 Ore. L. Rev. 171 (1929). Domicile is a highly personal matter. The fact that one is a student in a university does not entitle him to vote where "the university is situated, nor does it of itself prevent his voting there. He may vote at the seat of the university if he has his residence there and is otherwise qualified." Annot., 37 ALR 138, 139 (1925).

[10] *Second:* An adult student may acquire a domicile at the place where his university or college is situated, if he regards the place as his home, or intends to stay there indefinitely, and has no intention of resuming his former home. If he goes to a college town merely as a student, intending to remain there only until his education is completed and does not change his intention, he does not acquire a domicile there. *Baker v. Varser, supra.* See annot., 98 ALR 2d 488, 498 (1964). See 3 Geo. Wash. L. Rev. 121 (1934).

[11] *Third:* The presumption is that a student who leaves his parents' home to enter college is not domiciled in the college town to which he goes. See 29 C.J.S. *Elections* § 22 (1965). However, this presumption is rebuttable. It is an inference of fact based on probabilities and "the common experience of mankind" under the circumstances. Opinion of the Justices, 46 Mass. (5 Met.) 587 (1843). It stems from the following principles relating to domicile:

[12-14] The law permits no individual to be without a domicile. At birth he takes the domicile of the person upon whom he is legally dependent. Hence, "an unemancipated infant, being *non sui juris,* cannot of his own volition select, acquire, or change his domicile." *Thayer v. Thayer,* 187 N.C. 573, 574, 122 S.E. 307, 308 (1924) ; *In re Hall,* 235 N.C. 697, 702, 71 S.E. 2d 140, 143 (1952). A domicile, once required, is presumed to continue. It is never lost until a new one is established, and the burden of proof rests upon the person who alleges a change. *Reynolds v. Cotton Mills, supra; Hannon v. Grizzard, supra;* 25 Am. Jur. 2d *Domicile* § 87 (1966). To effect a change of domicile there must be (1) an actual abandonment of the first domicile, accompanied by the intention not to return to it and (2) the acquisition of a new domicile by actual residence at

another place, coupled with the intention of making the last acquired residence a permanent home. *Owens v. Chaplin, supra; In Re Finlayson,* 206 N.C. 362, 173 S.E. 902 (1934).

[15]  *Fourth:* Domicile is a fact which may be proved by direct and circumstantial evidence. It is "not more difficult of ascertainment, when required as the qualification of a voter, than residence or domicile at the moment of a man's death"—a matter often disputed and determined by probate courts. *Roberts v. Cannon,* 20 N.C. 398, 411 (1839).

[16]  A student's physical presence in the college town where he seeks to vote demonstrably fulfills the residency requirement of domicile. However, the court must rely upon both his words and his actions to determine whether the student has the requisite intent to make the town his home and to remain there indefinitely, the *animus manendi.* See annot., 98 ALR 2d 489 (1964).

[17]  A person's testimony regarding his intention with respect to acquiring a new domicile or retaining his old one is competent evidence, but it is not conclusive of the question. " 'All of the surrounding circumstances and the conduct of the person must be taken into consideration.' " *Martin v. Martin, supra* at 710, 118 S.E. 2d at 34; *accord, State v. Carter,* 194 N.C. 293, 139 S.E. 604 (1927) ; *Boyer v. Teague,* 106 N.C. 576, 11 S.E. 665 (1890) ; *Hannon v. Grizzard, supra.* The rule is well stated in 25 Am. Jur. 2d *Domicile* §§ 91 and 93 (1966) : "The determination of domicile depends upon no one fact or combination of circumstances, but upon the whole, taken together, showing a preponderance of evidence in favor of some particular place as the domicile. A person's own testimony regarding his intention with respect to acquiring or retaining a domicile is not conclusive; such testimony is to be accepted with considerable reserve, even though no suspicion may be entertained of the truthfulness of the witness. . . . [*C*] *onduct is of greater evidential value than declarations.* Declarations as to an intention to acquire a domicile are of slight weight when they conflict with the facts." (Italics ours.)

The Supreme Judicial Court of Massachusetts, in an advisory opinion requested by its House of Representatives in 1843, listed certain criteria for determining a student's domicile which are equally pertinent today:

If the student is maintained and supported by a parent with whom he has been accustomed to reside and to whose home he returns to spend his vacations; "if he describes himself of such place and otherwise manifests his intent to continue his domicile there," these are circumstances tending to prove his domicile has not changed. If he has no parents or has separated from them and is not supported by them; "if he has a family of his own and removes with them to such town; or by purchase or lease takes up a permanent abode there, without intending to return to his former domicil; if he depend on his own property, income or industry for his support; — these are circumstances, more or less conclusive, to show a change of domicil and the acquisition of a domicil in the town where the college is situated." Opinion of the Justices, *supra* at 589-90.

In addition to the foregoing considerations, an editorial note in 8 Ore. L. Rev. 171 (1929) suggests that a registrar might, in substance, ask the student applicant for voter registration the following questions: Did you leave your father's home for the temporary purpose of attending school or "of cutting loose from home ties"? Do you keep your permanent possessions in the place you claim as your residence, or do you keep there only enough for temporary needs? If you were to fail at the university or were forced to discontinue your studies because of illness would you return to your parents' home? Would you be living in the university town if the school were not there? If tomorrow you were to transfer to a school in another town would you still consider your present residence your home? For what purposes other than attending school are you in this college town? What occupation do you plan to follow upon graduation and where do you plan to follow it? Where do you maintain church or lodge affiliations, if any? Banking and business connections?

The answer to none of the foregoing questions would be conclusive of domicile, but each would be a circumstance from which the registrar and judge might draw an inference. On the other hand, as the editorial note points out, these circumstances might be outweighed by others: Even though the student left home for temporary purposes only, the evidence might show that he had since "cut loose entirely"; that his possessions were left at his father's house for storage purposes only; that even though he went to his father's house for vacations, he went only

to visit; that even though he would not have come to the university town but for the university he had made it his actual home independently of that fact. "He might get all his financial support from his father and yet have a home separate from his. He might transact business and belong to organizations in a town other than that of his residence, and so on." *Id.* at 173.

The author suggested that before attempting to register as a voter in the town where he is attending school a student should ask himself whether he, in good faith, considers the college town his home. "Each student is in a position to make an honest and accurate decision for himself. Other people can judge only from outward facts and circumstances although in case of a judicial determination that judgment would have to prevail." *Id.* at 173.

In this case, plaintiff left her parents' home in Tarboro to enter Meredith College at Raleigh as a freshman student. The college sends her grades to her parents. Her father pays her college expenses, supports and maintains her entirely. During vacations, and when the school is closed, she returns to her parents' home. Her only dwelling place in Raleigh is the dormitory room which she occupies subject to the rules and regulations of the college. Her personal property, except that required for her immediate needs, remains at her parents' home. Her church membership is in Tarboro. Her post-graduation plans are indefinite although she is "thinking about law school." Pending her appeal to the Superior Court from the refusal of the Wake County Board of Elections to register her, upon the advice of counsel, plaintiff moved her checking account from a bank in Tarboro to one in Raleigh. She also changed the address on her driver's license and on her college registration to show Meredith College as her permanent address.

[18] Certainly the foregoing evidence would have fully justified the judge below in finding that plaintiff was temporarily sojourning in Raleigh for the purpose of attending college; that she had not abandoned her domicile in Tarboro; and that she was, therefore, not eligible to vote in Raleigh. However, he did not make such findings. Instead he found that plaintiff had abandoned her former domicile and acquired a new one in Raleigh. The facts he found are binding on this Court, and they support his judgment that she is entitled to vote in Wake County. We must, therefore, affirm his judgment. However,

as previously pointed out, whether a particular student is entitled to register and vote in the town where he or she is attending college must be determined by the application of the rules stated herein to the specific facts of that individual's case. Decision here relates directly to plaintiff only. This is in no sense a class action.

It also seems appropriate to note that had Judge Brewer found that plaintiff's domicile remained in Tarboro she would not have been disfranchised. She would merely have found herself in the same situation as many of the State's judges, teachers, traveling salesmen, construction workers, truck drivers, executives, and a host of others whose work will take them away from home on election day and who will not be able to vote unless they make timely application for an absentee ballot. The election law, however, has amply safeguarded the voting privileges of all its citizens, and there is no legal or practical reason why any qualified voter cannot vote at the place of his legal residence if he is sufficiently interested in doing so. G.S. 163-226 to -240.5.

Affirmed.