GEORGE J. SHARPLEY v. STATE BOARD OF ELECTIONS; JERRY S. ALVIS, CHAIRMAN; JAMES R. VOSBURGH; WILLIAM J. WAGGONER; L. H. JONES; AND LEE C. SMITH, MEMBERS

No. 7410SC701

(Filed 20 November 1974)

1. Elections §§ 3, 7— protest not timely — action by State Board proper

The State Board of Elections may in its discretion consider and act upon a protest, even though such protest may not have been filed within the time period prescribed by the Board's own rules; moreover, the Board in appropriate circumstances may take action on its own motion even in the absence of any protest. G.S. 163-22(c), (d).

2. Elections §§ 3, 10— new election of five town commissioners — authority of State Board to order

Under G.S. 163-22.1 the State Board of Elections had the authority to order a new election for the five offices of town commissioner of Kill Devil Hills without at the same time ordering a new election for the offices of mayor and treasurer; furthermore, under that authority the Board was authorized to determine that the voting irregularity affecting one of the multiple elective offices for town commissioner substantially affected all five offices, and the Board could order a new election as to all five.

APPEAL by plaintiff from *McLelland, Judge,* 29 April 1974 Civil Session of Superior Court held in WAKE County.

Following a protest filed on 16 November 1973 with the Dare County Board of Elections concerning the 6 November 1973 general municipal election for the Town of Kill Devil Hills, the State Board of Elections, at the conclusion of a public hearing held in the Town on 18 December 1973, ordered a new election of Town Commissioners. On 17 January 1974 plaintiff brought this action to contest that order by filing complaint in the Superior Court in Wake County alleging that the State Board's decision was contrary to law and praying for an order directing that a letter of certification be issued to plaintiff as an elected Commissioner. Defendants answered, praying that the proceedings and order of the State Board be affirmed.

By order dated 4 February 1974 the new election was stayed pending the outcome of the hearing of this case. The action was heard before Judge McLelland at the 29 April 1974 Session of Superior Court, and by judgment of the same date Judge McLelland affirmed the decision of the State Board. From this judgment plaintiff appealed, and by order dated 24 May 1974 the new election was stayed pending outcome of the appeal.

Sharpley v. Board of Elections

*G. Irvin Aldridge; and Twiford, Abbott & Seawell by Christopher L. Seawell for plaintiff appellant.*

*Attorney General Carson by Associate Attorney James Wallace, Jr., for defendant appellees.*

PARKER, Judge.

Plaintiff's sole assignment of error is to the signing and entry of the judgment. Thus, the facts found are binding upon this Court, and the only question presented is whether error of law appears on the face of the record. *Hall v. Board of Elections,* 280 N.C. 600, 187 S.E. 2d 52 (1972). On this appeal no question is raised as to the fairness or intent of the State Board of Elections, and in his brief plaintiff concedes that the Board acted in good faith.

[1] Plaintiff first contends that the protest in this case was not filed within the time period prescribed by the rules adopted by the State Board and that the Board lacked power to suspend its rules so as to permit it to consider the protest. In this connection, G.S. 163-22, the same section of the General Statutes which gives the State Board "authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable" so long as they do not conflict with any provisions of G.S. Chap. 163, also expressly directs that the Board "shall investigate when necessary or advisable, the administration of election laws, frauds and irregularities in elections in any county and municipality and special district. . . ." G.S. 163-22(d). In our opinion, and we so hold, the authority of the State Board to conduct the investigation and to enter the order in this case was not dependent upon the filing of a timely protest. The mandatory tone of the statute which directs that the Board "shall investigate when necessary or advisable . . . frauds and irregularities in elections," makes clear that the Board in appropriate circumstances may take action on its own motion even in the absence of any protest. *A fortiori* the Board may in its discretion consider and act upon a protest, even though such protest may not have been filed within the time period prescribed by the Board's own rules. By adopting those rules the Board did not, and could not, inhibit or curtail the performance by it of duties otherwise expressly imposed upon it by statute. That this is so is further borne out by the directive in G.S. 163-22(c) that the State Board *"shall* compel observance of the requirements of the election laws by

county and municipal boards of elections and other election officers," and that "[i]n performing these duties, the Board *shall* have the right to hear and act on complaints arising by petition *or otherwise.* . . ." (Emphasis added.)

[2] The principal question raised by this appeal is presented by plaintiff's contention that the State Board lacked power to order a new election limited to the offices of Town Commissioners without also ordering a new election for all other Town Offices. At the 6 November 1973 election the voters of Kill Devil Hills were called upon to elect a Mayor, a Treasurer, and five Town Commissioners. In its order the State Board found that there were two candidates for Mayor, one of whom received 159 votes and the other 122 votes; that there was one unopposed candidate for Treasurer who received 231 votes; that there were sixteen candidates for the five offices as Town Commissioners, all of whom ran on an at-large basis, and that the votes received by these candidates in descending order were 131, 128, 126, 121, 115, 115, 115, 98, 94, 71, 70, 65, 40, 35, 34 and 15. The Board also found that "there did exist a general confusion on the part of the electorate in the locale of Kill Devil Hills as to its rights of registration and vote [sic]," and made detailed factual findings from which it concluded that it could not determine upon the evidence before it that more than three unlawful votes or less than two unlawful votes were cast. The Board concluded that the unlawful votes, whether two or three, could not possibly have affected the outcome of the election for the office of Mayor or the office of Treasurer, and did not order a new election for those offices. However, the State Board concluded that the unlawful votes "could have substantially affected the outcome of the election of Town Commissioners," and by the unanimous vote of all five members the State Board ordered a new election for the five offices of Town Commissioner.

We hold that in entering this order the State Board acted within its lawful authority. G.S. 163-22.1, which was enacted by Sec. 5 of Chap. 793 of the 1973 Session Laws and which became effective 1 July 1973, is as follows:

"§ 163-22.1. Power of State Board to order new elections.—If the State Board of Elections, acting upon the agreement of at least four of its members, and after holding public hearings on election contests, alleged election irregularities or fraud, or violations of election laws, determines that a new primary, general or special election

Sharpley v. Board of Elections

should be held, the Board may order that a new primary, general or special election be held, either statewide, or in any counties, electoral districts, or municipalities over whose elections it has jurisdiction.

"Any new primary, general or special election so ordered shall be conducted under applicable constitutional and statutory authority and shall be supervised by the State Board of Elections and conducted by the appropriate elections officials.

"The State Board of Elections has authority to adopt rules and regulations and to issue orders to carry out its authority under this section."

In our opinion, and we so hold, under G.S. 163-22.1 the State Board had the authority to order a new election for the five offices of Town Commissioner of Kill Devil Hills without at the same time ordering a new election for the offices of Mayor and Treasurer.

We further hold the trial court was correct in concluding that "under the authority conferred by Section 163-22.1 of the General Statutes the Board was authorized to determine, as it did, that the irregularity affecting one of the multiple elective offices for Town Commissioner of Kill Devil Hills substantially affected all, and that the Board was authorized to order, as it did, a new election as to all of such multiple offices."

The judgment of the Superior Court affirming the decision of the North Carolina State Board of Elections is

Affirmed.

Judges CAMPBELL and VAUGHN concur.